ELI HOBBS, Plaintiff in Error, *vs*. MARY P. SAUNDERS, Defendant in Error.

*Opinion filed June 16, 1914.*

WILLS—*when opinion that testator was sane is not entitled to much weight.* The opinion of a subscribing witness that the testator was of sound mind and memory, which opinion is based upon his observations during ten or fifteen minutes' stay in the testator's sick-room, is not entitled to much weight as against the testimony of the doctors and the nurse, whose opportunities for observing the testator and knowing his condition were much more extensive.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding.

A. W. MARTIN, and EDWARD H. S. MARTIN, for plaintiff in error.

E. F. MASTERSON, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a writ of error to the circuit court of Cook county to bring up for review the record of a proceeding for the probate of the will of Thomas W. Saunders. The testator executed two wills. The first (or older) of the wills was dated January 2, 1897. The last will was dated February 2, 1909. The validity of the first will is not questioned on any ground except it is contended that the last will revoked it. If the last will be valid it is conceded that it revokes the former. The result is that the whole controversy turns upon the validity of the last will.

The manner in which the case was brought to a hearing in the probate court is out of the ordinary and is the subject of some discussion by the counsel of the respective parties. It appears that the last will was offered for probate before the first; that acting Judge Pond, then sitting for Judge Cutting in the probate court, heard the application for probate and upon a consideration of the evidence refused the will probate; that an appeal from the order refusing probate was prayed to the circuit court, and that before the time for perfecting the appeal had expired the parties in interest entered into an agreement that the order refusing the second will probate should be vacated and set aside and that both wills should be brought into court and a full hearing had before Judge Cutting; that after the time for appeal had expired it is claimed that Mary P. Saunders, widow and principal devisee under the first will, sought to disregard the stipulation in respect to the vacation of the order denying probate of the second will, and a petition was filed in the probate court setting up the stipulation and asking the probate court to enforce the stipulation by granting a full hearing upon the question of admitting the second will to probate. Without going into all the details of the controversy, it may be stated, generally, that such proceedings were finally had that there was a full hearing upon evidence in the probate court before Judge Cutting, which resulted in his refusing probate to the second and granting probate to the first will. From the order refusing probate of the second will an appeal was prosecuted to the circuit court and there the matter was heard upon its merits, resulting in an order again refusing the probate of the second will. The will disposes of both real and personal property. This writ of error is sued out to review the judgment of the circuit court denying probate to the second will.

Defendant in error contends that the probate court was without jurisdiction to set aside the former order and to

hear the application to probate the will a second time, and
that for the same reason the circuit court had no jurisdic-
tion of the proceeding on an appeal to that court. But
for the stipulation of the parties, of course, this contention
would be conclusive of the whole matter. We do not find
it necessary, however, to make any holding upon the cor-
rectness of the procedure that was followed in bringing
the merits of this controversy before the court. Having
reached the conclusion, from the examination of the evi-
dence, that the case has been properly disposed of, we pre-
fer to rest our judgment on the merits of the controversy
rather than to reach the same result by basing a judgment
on some technical irregularities in the procedure.

Both the probate and circuit courts found that the tes-
tator was not of sound and disposing mind and memory
when he executed the last will, and entered decrees deny-
ing the admission of said will to probate for that reason.
The errors assigned question the correctness of this finding
in the circuit court and the decree based thereon.

There were but few witnesses who testified to the men-
tal condition of the testator at the time the will in question
was executed and the testimony is confined within narrow
limits. Thomas W. Saunders, the testator, was about fifty-
five years old when the last will was executed. He was
then suffering from cancer of the bowels, of which he died
fifty-four days after the making of the will. The will was
witnessed by George C. Wagner and James H. Westervelt.
Wagner testified that he was called into the presence of the
testator to witness the will; that he was in the presence of
the testator about ten or fifteen minutes; that the testator
appeared to him to be of sound mind and memory at the
time he signed the will, and that the witness so believed at
the time he signed his name as a witness to the instrument.
The witness Westervelt testified that he was present and
saw the testator sign his name to the will in question; that
he signed it as a witness at the request of the testator; that

he was with the testator three or four hours on the day the will was signed and that he accompanied the testator to a hospital, where he was taken on the afternoon of the day the will was signed; that at the time the will was signed he did not think anything about the mental condition of the deceased; that afterwards, in thinking the matter over and remembering the condition the testator was in and the occurrences of the day on which the will was signed, his mind had come to rest upon the conclusion that the testator was not of sound and disposing mind at the time the will was executed. He testifies to the intense pain and suffering of the testator; that he was very nervous and trembling in his hands, and was yelling, "Oh, my God! I am falling to pieces!" and other similar exclamations. He testifies that when Saunders was lifted up in the bed to attach his name to the will he said, "Grab me! I am falling apart!" and that his hand was trembling very much. He testifies that a bottle of whisky and glasses were brought into the sick-room, and that the witness, the deceased and Wagner drank whisky there together; that this occurred immediately after the will was signed. He testifies that the deceased said at the time the whisky was being served, "Well, boys, if I have got to die I will die a dead game sport."

The testator was examined on the day the will was executed, by Drs. Abel and Hatfield, his attending physicians, and Dr. Steele, a surgeon and physician. Drs. Steele and Abel testified on the hearing. Dr. Hatfield died before the trial. The examination was held about three o'clock in the afternoon at the residence of the testator, 3121 Indiana avenue, in the city of Chicago. Dr. Steele testified that Saunders was suffering with cancer of the intestines; that opiates had been administered to him for three weeks; that on the day the examination was made he had received four grains of morphine and two of opium; that the testator was under the influence of these drugs when he saw him,

at three o'clock in the afternoon; that the deceased was in a stupor from the use of opiates. He also testified that he made a very thorough examination and found a complete obstruction of the intestines, and that the examination was made for the purpose of determining whether an operation producing an artificial opening was advisable; that after such examination he advised that such an operation could be made and life thereby prolonged but that no operation would cure. This witness testifies, unequivocally, that the testator was not of sound and disposing mind at the time this examination was made; that he based his opinion upon his examination, the extremely rapid and irregular pulse and the conversation that he had with the testator during the examination. He testifies that he was nervous, excitable, hysterical, crying a part of the time, groaning and moving about, and irregular in his answers to the questions asked him, and that he would at intervals close his eyes and drop off into a sort of stupor.

Dr. Abel testified that he had been practicing medicine thirty-one years and that he had been the family physician of Thomas W. Saunders for twenty years prior to his death; that he saw him at his home on the day he was taken to the hospital; that he saw him before and immediately after the making of the will; that it was about an hour or two before the will was made that he had seen him; that the time he saw him with Drs. Steele and Hatfield was just after the will had been signed; that he was present during all of the time that Dr. Steele was there and remained after he left; that he had prescribed all the medicine that the testator had taken on that day. He testifies that up to the time the will was signed the patient had taken four grains of morphine and three of opium; that the effect upon the deceased produced by the opiates was hypnotic; that his mind was not clear, and that he attributes the condition of his mind to the effect of the opiates that had been administered to him. He testifies that

he was mentally incompetent to understand or transact any business and that he was not of sound and disposing mind.

Edna Byrne testified that she was a nurse in charge of the testator for several days prior to the day the will was signed; that she attended him as his nurse until he was taken to the hospital; that she never saw him after that time; that she was acting under the instructions of Drs. Abel and Hatfield and was in close attendance upon the patient, nursing and caring for him all of the day on which the will was signed. She says in her testimony that he was extremely nervous on that day, sobbing, fretting and crying when he was left alone; that he was at times in a stupor from the effect of drugs which she had administered under the direction of the physicians; that he was flighty, and that the physicians ordered the quantity of opiates reduced on account of flightiness; that in her conversation with him he would sometimes answer questions intelligently and that at other times he would give no answer at all. She expressed the opinion that the testator was not of sound and disposing mind during the afternoon that the will was signed, and that she did not believe he was rational enough to understand what he was doing.

The only testimony given tending to show that the testator was competent to make a will was that of the attorney who prepared the will, and who was a beneficiary, in a small amount, under the will. The attorney testified to the circumstances under which the will was executed, and testified that in his opinion the testator was of sound and disposing mind. He stated very emphatically that the testator was as clear in his mind that day as he had ever seen him, and there was nothing in his manner or talk or appearance that would indicate that his mind was not as sound on that day as when he was in health, and that he was able to fully understand and comprehend the effect of what he was doing.

We have thus gone through all of the evidence that was submitted and upon which both the probate and circuit courts denied the probate of this last will. The testimony of the witness Wagner is not entitled to great weight, for the reason that he was only in the presence of the testator a very short time. An opinion of a layman based upon such observance as he could make during a ten or fifteen minutes' stay in the sick-room of the testator cannot be given the same weight as the testimony of those who had more extended opportunities to form a correct opinion. It is to be noted that both of the physicians, the nurse and Westervelt, all of whom had much better opportunities to form an accurate judgment as to the mental condition of the testator than did Wagner, testify that the testator was not of sound and disposing mind on the day this will was signed. There is furthermore some force in the circumstance that the testator had made a will twelve years before, in which he had made a fair and rational disposition of his estate and with which he seems to have been satisfied until the day upon which this last will was prepared and signed. There is no evidence that he had ever expressed any dissatisfaction with his former will until from some strange impulse he made this second will, giving all of his property to a trustee, with directions to pay his wife a small monthly allowance and to pay legacies to various other persons who do not seem to have had any special claim upon his bounty.

We are of the opinion that the court correctly refused the probate of the last will. The judgment of the circuit court of Cook county is accordingly affirmed.

*Judgment affirmed.*